OPINION OF THE COURT
Cooke, J.
The question presented in this appeal is whether the award of an arbitrator, based upon issues submitted to him by the parties to a collective bargaining agreement, is required to be vacated as violative of the public policy of this State. The arbitrator found that there was no just cause for the discharge of a municipal employee, who admitted receiving unlawful gratuities, and modified the penalty imposed, directing that *27 the employee make restitution to the city-employer of the gratuities received and ordering him suspended for six months without pay.
During the criminal trial of a salesman, who solicited business from the City of Binghamton, Richard Cornwell, a city building and maintenance superintendent, admitted, under a grant of immunity, that he received gifts from the defendant. As a result of this and additional testimony by other city employees, the salesman was convicted of bribery in the second degree (Penal Law, § 200.00). Upon the conclusion of the trial, Cornwell was summarily discharged by the Mayor of Binghamton for "bribe-receiving” based upon admissions made by him at the trial of the salesman.
The Binghamton Civil Service Forum, the duly organized representative of city employees, filed a grievance under the collective bargaining agreement then in force which provided that "[n]o employee shall be disciplined or discharged without just cause.” The agreement further provided a four-step grievance procedure culminating in arbitration in which any dispute between the parties, including one concerning the meaning or interpretation of the collective bargaining agreement, was to be resolved.
With no further action being taken by either party, an arbitrator was chosen and the Forum and the city stipulated the following issue for resolution: "Was Richard Cornwell discharged for just cause pursuant to [the collective bargaining agreement]?” At the conclusion of the hearing, in which each party fully participated, the arbitrator made an award which found that Cornwell’s discharge was not for just cause pursuant to the terms of the agreement and reduced the penalty imposed to a six-month suspension without pay.
Upon motion to confirm the award, the city cross-moved to vacate, claiming for the first time outside of the arbitral forum, that by modifying the penalty imposed the arbitrator exceeded his powers, rendered an award on a matter which was not a term and condition of employment and that the award was contrary to the expressed public policy of this State. The Appellate Division, reversing the determination of the Supreme Court which had confirmed the award, vacated the award holding it violative of public policy on the ground that "municipal authorities [may] not be restricted in their power to discharge employees who participate in criminal acts in the absence of a clear and express waiver of that power.” *28 (Matter of Binghamton Civ. Serv. Forum [City of Binghamton], 57 AD2d 27, 29). We reverse.
 As we recently stated in Matter of Acting Superintendent of Schools of Liverpool Cent. School Dist. (United Liverpool Faculty Assn.) (42 NY2d 509), any challenge to the submission of a dispute to arbitration between an employer and employee in the public sector necessarily involves a two-part inquiry into the question of whether there is a valid agreement to arbitrate a grievance (CPLR 7503, subd [a]). Under the Liverpool approach, it must first be determined that the submitted grievance is one permissible for resolution by arbitration. Manifestly, some matters, such as the decision to grant tenure to probationary teachers, are indefeasibly vested in executive authorities by law and, hence, may not be resolved in the arbitral forum (see Matter of Cohoes City School Dist. v Cohoes Teachers Assn., 40 NY2d 774). It is well settled, however, that disputes relating to whether the necessary predicate exists for taking disciplinary action against a public employee and the proper penalty to be imposed if that predicate exists are terms and conditions of employment under the Taylor Law (Civil Service Law, § 204, subd 1), and as such, may be agreed by a public employer and employee to be resolved by arbitration (Board of Educ. v Associated Teachers of Huntington, 30 NY2d 122, 131-132).
The second level of the Liverpool inquiry focuses on whether the authority to submit the dispute to arbitration was in fact exercised by the parties to the arbitration agreement (Matter of Acting Superintendent of Schools of Liverpool Cent. School Dist. [United Liverpool Faculty Assn.] 42 NY2d 509, 513, supra). The collective bargaining agreement between the parties here expressly provided that resolution of whether there was just cause for the discharge or other discipline of an employee was to be resolved in a four-step grievance procedure, culminating in arbitration. Indeed, the parties here also stipulated orally on the record to submit this very issue of just cause to the arbitrator. Having so agreed, and having so stipulated, neither party may now be heard to complain that the dispute submitted to the arbitrator did not encompass an arbitrable term and condition of employment, for once the issue is properly before the arbitrator, questions of law and fact are merged in the award and are not within the power of the judiciary to resolve (Rochester City School Dist. v Rochester Teachers Assn., 41 NY2d 578, 582-583; Matter of Associ *29 ated Gen. Contrs., N. Y. State Ch. [Savin Bros.], 36 NY2d 957, 958-959). The city’s exclusive remedy in this regard is afforded by statute (CPLR 7503), and if no objection is made to the submission of the dispute, it is deemed to be waived.* This restriction may not later be obviated, upon a motion to confirm an award, by blanket allegations that the arbitrator lacked the power to resolve the very issue which was submitted to him by the parties.
Inasmuch as the arbitrator had the power to determine whether the grievant had been discharged for just cause, the only question remaining is whether the arbitrator, in reducing the penalty imposed upon the grievant, did violence to the expressed public policy of the State which would require vacating an award not otherwise reviewable for errors of law and fact. Separate and apart from the otherwise broad power of public employers and employees to agree to resolve disputes arising from terms and conditions of employment by arbitration (see Syracuse Teachers Assn, v Board of Educ., 35 NY2d 743, 744), a small number of areas, interlaced with strong governmental or societal interests, restrict the power of an arbitrator to render an otherwise proper award (Matter of Susquehanna Val. Cent. School Dist. at Conklin [Susquehanna Val. Teachers’ Assn.], 37 NY2d 614, 616-617). In the public sector, this public policy limitation has arisen with respect to school matters and is derived from the statutory scheme implicit in the Education Law (see, e.g., Matter of Candor Cent. School Dist. [Candor Teachers Assn.], 42 NY2d 266). The discipline imposed upon a miscreant public employee, however, is not so limited so long as there has been a clear expression of intention to arbitrate the matter.
The public policy of this State, as evidenced by statutory and decisional law, is devoid of any indication that a bribe-receiving public employee must be discharged so as to justify the refusal of a court to give effect to the award of the arbitrator. Thus, section 805-a of the General Municipal Law which prohibits a municipal officer from accepting a gift under *30 circumstances where the inference could be drawn that the gift was intended to influence the performance of his official duties does not inflexibly mandate the discharge of an employee in violation of its proscriptions. There being no statutory bar to imposition of a lesser sanction than outright discharge (cf. Matter of Union Free School Dist. No. 2 of Town of Cheektowaga v Nyquist, 38 NY2d 137, 144), there is nothing in the award which would render it irrational as a matter of law or violative of public policy. Similarly, section 30 of the Public Officers Law, which provides for the vacatur of a public office when its incumbent is convicted of a felony, is inapplicable to the case at bar, there being no conviction supplied necessary for its application.
Having bargained to arbitrate whether there was just cause for the discipline or discharge of a municipal employee, and having submitted that very issue to the arbitrator, the city is bound by the determination of the tribunal to which the dispute was submitted. The fact that a different result might have been reached had the dispute been resolved in the courts is of no moment and does not empower a court to substitute its judgment for that of the arbitrator. The fact that we may disagree with the wisdom and advisability of the arbitration award, gives us no license, as a court of law, to impose what we may feel is a more appropriate remedy. The bargain, having been struck, must now be honored.
Accordingly, the order of the Appellate Division should be reversed and the order of the Supreme Court, confirming the award of the arbitrator, reinstated, without costs.

 For example, in the context of this case the city’s contention that the arbitrator exceeded his power by modifying the penalty imposed could only have been raised prior to the commencement of the arbitration proceedings (CPLR 7503, subd [b]). By its active participation in the selection of an arbitrator, the city waived any objection it may have had on the ground that there was no contract to arbitrate the issue of severity of the penalty (see, e.g., Matter of National Cash Register Co. [Wilson], 8 NY2d 377, 383; Matter of Yonkers Public Lib. [Landolfe Elec. Corp.], 27 AD2d 575, 576).